**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

J.B. HUNT TRANSPORT, INC.,

        Plaintiff,

v.                                  Case No.: 3:23-cv-433-WWB-MCR

TROYZ TOWING AND STORAGE,
INC.,

        Defendant.

_____/

## <u>ORDER</u>

THIS CAUSE is before the Court on the two-day, non-jury trial that commenced on February 24, 2025, on Plaintiff J.B. Hunt Transport, Inc.'s ("**J.B. Hunt**") claims against Defendant Troyz Towing and Storage, Inc. ("**Troyz Towing**").

## I.    LEGAL STANDARD

"In an action tried on the facts without a jury[,] . . . the court must find the facts specially and state its conclusions of law separately. The findings and conclusions . . . may appear in an opinion or a memorandum of decision filed by the court." Fed. R. Civ. P. 52(a)(1). "The burden of proof in civil cases is the same regardless of whether the finder of fact is a judge in a bench trial or a jury." *Men of Destiny Ministries, Inc. v. Osceola Cnty.*, No. 6:06-cv-624-Orl, 2006 WL 3219321, at *3 (M.D. Fla. Nov. 6, 2006). Plaintiff bears the burden of establishing, by a preponderance of the evidence, each element of its claim. *Id.* "A 'preponderance of the evidence' . . . means an amount of evidence that is enough to persuade [the trier of fact] that the Plaintiff's claim is more

likely true than not true."  Pattern Jury Instructions (Civil Cases) of the Eleventh Circuit, Basic Instruction No. 3.7.1.

## II.    FINDINGS OF FACT

This case arises from a dispute regarding Troyz Towing's towing, storage, and sale of a trailer leased by J.B. Hunt.  J.B. Hunt is a motor carrier and freight broker.  (Doc. 9, ¶ 2; Doc. 14, ¶ 2).  It 2014, J.B. Hunt entered into an Equipment Lease Agreement with Bowman Trailer Leasing, LLC ("**Bowman**").  (Doc. 56-4 at 1).  Pursuant to the lease agreement, J.B. Hunt leased a 2020 Hyundai trailer and maintained a right to possess the trailer, which J.B. used for business.  (Doc. 58 at 61:2–6, 129:1–4, 157:14–17, 187:10–13).   J.B. Hunt subsequently contracted with an independent motor carrier, allowing the carrier to haul J.B. Hunt loads using the trailer.  (*Id.* at 161:17–18, 163:2–5). Unbeknownst to J.B. Hunt, the motor carrier abandoned the trailer at a service station. (*Id.* at 134:1–4, 163:3–5; *see also* Doc. 56-2 at 26).

On July 12, 2022, Troyz Towing towed the trailer from the service station.  (Doc. 34 at 7).  Decals of J.B. Hunt's identification, cell phone number, and e-mail, as well as Bowman's identification and cell phone number, were visibly displayed on the back of the trailer.  (Doc. 56-13 at 24–29).  Pursuant to the requirements of section 713.78, Florida Statutes, which governs liens for recovering, towing, or storing vehicles, Troyz Towing's corporate representative, Nicole Bostick, testified that Troyz Towing searched the vehicle identification number ("**VIN**") through a third-party database, Auto Data Direct.  (Doc. 58 at 29:25–30:11); *see also* Fla. Stat § 713.78(4)(a).[1]  The VIN search did not reveal any information, which Bostick admits frequently occurs with trailers.  (*Id.* at 91:1–12 ("Trailers

---

[1] The Court looks to the 2022 version of the Florida Statutes, which governed the parties at the time of their conduct.

never pull up anything[.]")).  Notably, Troyz Towing did not run the license plate through the system.  (*Id.* at 54:14–55:1).  J.B. Hunt's corporate representative, Benjamin Warren, testified that J.B. Hunt did not receive any communication—certified mail, phone call, or e-mail—from Troyz Towing.  (*Id.* at 133:20–23).[2]  Instead, on July 15, 2022, Troyz Towing mailed a "good faith" letter to the Jacksonville Sheriff's Office in which it certified that "a physical search" of the trailer did not reveal any owner, insurer, or lienholder information. (Doc. 56-21 at 1); *see also* Fla. Stat. § 713.78(4)(e) (listing actions that must be taken to constitute a "good faith effort").

Nonetheless, on July 26, Mr. Warren located the trailer through its GPS device and called Troyz Towing at its phone number listed on Google.  (Doc. 58 at 128:12–21). During the call with Ms. Creamer, Mr. Warren confirmed the trailer's identification and stated J.B. Hunt's intent to retrieve it.  (*Id.* at 134:1–11).  To release the trailer, Troyz Towing required a hold harmless agreement and payment for towage and storage.  (*Id.* at 134:12–17).  Mr. Warren stated that J.B. Hunt could pay only by "comchek"[3] and therefore required Troyz Towing's tax identification number.  (*Id.* at 134:20–22).  Ms. Creamer did not have the tax identification number but said she would obtain it from Mrs. Bostick.  (*Id.* at 136:2–5).  E-mails immediately following the phone call reflect Mr. Warren and Ms. Creamer's communications regarding the hold harmless agreement, request for

---

[2] Mr. Warren's account of the parties' communications regarding the trailer's release diametrically opposes that of Mrs. Bostick and Troyz Towing's administrative assistant, Joy Creamer.  Because the Court does not credit Mrs. Bostick and Ms. Creamer's testimony, it adopts Mr. Warren's account of events regarding their communications.

[3] According to Mr. Warren, a "comchek" is similar to a personal check but requires an express code, such as a tax identification number, to issue payment and is often used by transportation and motor carriers.  (*Id.* at 134:25–135:8).

the tax identification number to make payment, and J.B. Hunt's request for the invoice, which totaled $2,440.00.  (Doc. 56-11 at 7–11).

On August 18, J.B. Hunt mailed Troyz Towing all the necessary paperwork.  (Doc. 58 at 85:21–22, 144:4–8).  Despite Mr. Warren's repeated attempts to obtain the tax identification to finalize the trailer's release with payment over the next several weeks, Troyz Towing did not provide it.  (*Id.* at 147:3–24, 182:24–183:3).  Rather, without J.B. Hunt's knowledge, Troyz Towing set the trailer for auction.  (*Id.* at 147:25–148:11).  The trailer was auctioned to a third party on August 24, but it was only in September, when Mr. Warren called again to obtain the tax identification number, that J.B. Hunt learned of the sale.  (*Id.* at 80:3–8, 148:13–21).  Due to the sale, J.B. Hunt could not complete a load with a customer and had to continue its monthly lease payments for the trailer, as well as purchase the trailer from Bowman for $33,920.00 pursuant to their contract.  (*Id.* at 150:6–8, 151:8–152:7).

J.B. Hunt seeks compensatory damages, punitive damages, and attorney's fees against Troyz Towing for Fraud (Count I), Conversion (Count II), Replevin (Count IV), and Unjust Enrichment (Count V).[4]  (*See generally* Doc. 9).

## III.    CONCLUSIONS OF LAW

As an initial matter, Troyz Towing claims this Court lacks subject matter jurisdiction because the amount in controversy is not met.  "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different

---

[4] J.B. Hunt has withdrawn its claim for tortious interference with a business relationship.  (*See* Doc. 50 at 1).

States[.]"  28 U.S.C. § 1332(a).  In determining the amount in controversy, the relevant question is whether the plaintiff seeks damages in excess of the jurisdictional limit, not whether the plaintiff will actually recover sufficient damages.  *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010).

Troyz Towing argues that because J.B. Hunt did not own the trailer, its value should not be considered.  However, "under Florida law, a lienholder is considered to be the 'owner' of property for the purposes of conversion if he has the present right to possession."  *Beach Cmty. Bank v. Disposal Servs., LLC*, 199 So. 3d 1132, 1134 (Fla. 1st DCA 2016) (citing *Bel-Bel Int'l Corp. v. Cmty. Bank of Homestead*, 162 F.3d 1101, 1108 (11th Cir. 1998)).  Thus, the trailer's value, alleged in the Amended Complaint at approximately $45,000.00, is sufficiently placed in controversy.  (Doc. 9, ¶¶ 8–9).

J.B. Hunt additionally alleged a daily cost of $225.00 in consequential damages for the trailer's lost profits, which totaled $61,650.00 at the time of filing.  (*Id.* ¶ 26); *see also Orlando Health, Inc. v. HKS Architects, Inc.*, 792 F. Supp. 3d 1298, 1302 (M.D. Fla. 2025) (explaining that loss of use, rental expenses, and lost profits are consequential damages under Florida law); *Marlin VI Princess Deep Sea Fishing, LLC v. N. Assurance Co. of Am.*, No. 8:13-cv-01812, 2013 WL 5920269, at *3–4 (M.D. Fla. Nov. 4, 2013) (considering consequential damages in determining the amount in controversy).  Accordingly, these sums alone exceed the amount in controversy.

### A. Conversion

J.B. Hunt alleges that Troyz Towing converted the trailer when it withheld and sold the vehicle.  "Under Florida law, the elements of conversion are (1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership

therein." *Joe Hand Promotions, Inc. v. Creative Ent., LLC*, 978 F. Supp. 2d 1236, 1241 (M.D. Fla. 2013) (quotation omitted).

It is undisputed that Troyz Towing rightfully gained possession when the service station instructed Troyz Towing to remove the abandoned trailer from its property. *See* Fla. Stat. § 715.07(2) (2022). But the right is not absolute: "[w]hen a defendant rightfully acquires possession of a plaintiff's property, an action for conversion may arise out of the plaintiff's demand for its return and the defendant's refusal to surrender it." *United States v. Bailey*, 288 F. Supp. 2d 1261, 1275 (M.D. Fla. 2003); *see also Joseph v. Chanin*, 940 So. 2d 483, 487 (Fla. 4th DCA 2006).

Based on the parties' agreement, J.B. Hunt had a right to reclaim the trailer upon payment. To tender payment, J.B. Hunt repeatedly attempted to obtain Troyz Towing's tax identification number. (Doc. 58 at 147:3–18, 182:24–183:3). In failing to provide the number, Troyz Towing refused to accept payment and thereby wrongfully deprived J.B. Hunt of its possessory interest in the trailer. *See Marine Transp. Servs. Sea-Barge Grp., Inc. v. Python High Performance Marine Corp.*, 16 F.3d 1133, 1140 (11th Cir. 1994) (holding that a cargo transporter converted a purchaser's property when the purchaser presented payment for release of the contracted cargo and the transporter refused to accept the check); *Beach Cmty. Bank*, 199 So. 3d at 1135 (holding that the plaintiff properly alleged that the defendant converted the bank's collateral interest in property by failing to comply with the bank's lawful demand for the property's return).

Additionally, Troyz Towing also wrongfully deprived J.B. Hunt of its possessory interest when it auctioned the trailer because the sale violated section 713.78. First, the statute authorizes the public sale of vehicles "for which reasonable charges for recovery,

6

towing, or storing remain unpaid."  Fla. Stat. § 713.78(6).  There was no right to auction the trailer as "unpaid" because, as already explained, Troyz Towing impeded J.B. Hunt's active efforts to make payment.

Second, Troyz Towing failed to provide the requisite notice of the trailer's sale. Fla. Stat. § 713.78(6) ("The notice [of sale] must be sent to the owner of the vehicle or vessel and the person having the recorded lien on the vehicle or vessel at the address shown on the records of the registering agency at least 30 days before the sale of the vehicle or vessel.").  Even if the Court credited Mrs. Bostick's testimony that the database search of the trailer's VIN did not produce J.B. Hunt or Bowman's information, their information was clearly displayed on the outside of the trailer.  (Doc. 56-13 at 24–29). Still, Troyz Towing did not contact J.B. Hunt.  (Doc. 58 at 133:20–23).

Finally, Troyz Towing did not wait fifty days from the date the trailer was first stored before selling it.  *See* Fla. Stat. § 713.78(6) ("[The vehicle] may be sold by the owner or operator of the storage space for such towing or storage charge . . . 50 days after the vehicle or vessel is stored by the lienor if the vehicle or vessel is 3 years of age or less."). With a manufacture date of September 2019 and the sale occurring in August 2022, the trailer was less than three years old.  (Doc. 58 at 80:3–8, 146:25–147:2).  However, only forty-three days passed from the trailer's storage on July 12, 2022, to its sale on August 24, 2022.

Florida courts strictly adhere to section 713.78's requirements.  *See, e.g.*, *Save A Lot Car Rental, Inc. v. Tri J. Co. Towing & Recovery*, 325 So. 3d 285, 289 (Fla. 2d DCA 2021) ("Because [the defendant] did not comply with the notice requirements of section 713.78, it was improper for it to sell [the plaintiff's] vehicle."); *Dowell v. State Farm Mut.*

*Auto. Ins. Co.*, 269 So. 3d 662, 664 (Fla. 1st DCA 2019) ("The notice requirements of [section 713.78] are not discretionary; nor are they a technicality. Based on the plain language of the statute, timely notice is mandatory and serves several essential purposes."); *Ford Motor Credit Co. v. Sw. Transp., Inc.*, 668 So. 2d 1068, 1070 (Fla. 3d DCA 1996) (holding that a towing company must forfeit its storage charges because it did not use good faith best efforts to comply with section 713.78's notice requirements). Troyz Towing violated these requirements and consequently converted the trailer.

Troyz Towing claims the doctrine of unclean hands bars recovery because J.B. Hunt did not pay the towing and storage fee. However, the doctrine is premised on a finding that the lack of payment was J.B. Hunt's fault. *See Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 450–51 (11th Cir. 1993) ("[T]o successfully avail itself of the doctrine of unclean hands, . . . the defendant must demonstrate that the *plaintiff's wrongdoing* is directly related to the claim against which it is asserted." (emphasis added)). As previously explained, Troyz Towing impeded J.B. Hunt's payment attempts and, therefore, the unclean hands defense fails. For the same reason, Troyz Towing's assertion that J.B. Hunt failed to mitigate its damages when it failed to pay the towing and storage fees also fails. (*See* Doc. 59 at 161:11–17). Therefore, the Court finds in favor of Plaintiff as to Count II.

### B. Fraudulent Misrepresentation

J.B. Hunt asks this Court to find Troyz Towing liable for fraudulent misrepresentation based upon Troyz Towing's statement that it would release the trailer upon payment and the company's subsequent failure to do so. "A fraudulent misrepresentation claim under Florida law has four elements: '(1) a false statement

8

concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation.'" *Harris v. Jayo* (*In re Harris*), 3 F.4th 1339, 1349 (11th Cir. 2021) (quoting *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)).

As previously stated, evidence introduced at trial displays that J.B. Hunt diligently sought to obtain Troyz Towing's tax identification number to provide payment. Troyz Towing did not object to providing the number and represented for an extended period of time that it was actively working to provide the information. (Doc. 56-11 at 8; Doc. 58 at 136:2–5, 147:11–16). Meanwhile, the company set and sold the trailer at auction. In doing so, Troyz Towing not only made a false statement, but a false omission by failing to provide notice of the auction under section 713.78(6). *See Wurtzebach v. Flooring Depot FTL, Inc.*, 384 So. 3d 251, 255 (Fla. 4th DCA 2024) (explaining that under a common law fraud claim, "a defendant ma[kes] a material false statement or *omission* directly to the plaintiff" (emphasis added) (quoting *Gulf Coast Produce, Inc. v. Am. Growers, Inc.*, No. 07-80633-CIV, 2008 WL 660100, at *6 (S.D. Fla. Mar. 7, 2008))).

On these facts, the Court reasonably infers that Troyz Towing knew it would not provide J.B. Hunt with the tax identification number and furthermore intended to induce J.B. Hunt to rely on its representations to prevent J.B. Hunt from obtaining the trailer before its auction. *See Fifth Episcopal Dist. Dev., Inc. v. Associated Bldg. Servs., Inc.*, No. 2:16-CV-213, 2018 WL 9943828, at *4 (N.D. Ala. July 26, 2018) (inferring that the defendant, despite his representations otherwise, knew he and his company were not licensed to do business in the state and that defendant intended to induce plaintiff to hire

his company with such representations).  As a result, J.B. Hunt was deprived of its leasehold interest in the trailer.

In its defense, Troyz Towing argues that the independent motor carrier's abandonment of the trailer was an intervening or superseding cause of J.B. Hunt's damages.  The Court finds no reason why the abandonment precludes J.B. Hunt from pursuing claims against Troyz Towing for its conduct, and Troyz Towing fails to expound upon its defense in its argument for a directed verdict and its proposed findings of fact and conclusions of law.  Troyz Towing also argues that the motor carrier is an indispensable party to this action.  However, similar to the intervening or superseding cause defense, how the trailer ended up abandoned has no relevance to Troyz Towing's conduct after it rightfully gained possession of the trailer.  The Court can provide full relief to the existing parties and proceed without impeding the motor carrier's interests or exposing either existing party to multiple or inconsistent obligations.  Fed. R. Civ. P. 19(a)(1).  Accordingly, both defenses fail, and the Court finds in favor of Plaintiff with respect to Count I.

### C. Replevin

In its Amended Complaint, J.B. Hunt sought a Writ of Replevin for the trailer's return.  (Doc. 9, ¶ 55).  At trial, however, J.B. Hunt conceded that recovery of the trailer is not permitted because Troyz Towing no longer possesses the trailer; instead, J.B. Hunt seeks damages under the replevin statute, arguing that it is entitled to the trailer's fair market value in lieu of the trailer itself.  (Doc. 58 at 204:25–205:12).

"Any person whose personal property is wrongfully detained by any other person or officer may have a writ of replevin to recover said personal property and any damages

10

sustained by reason of the wrongful taking or detention as herein provided." Fla. Stat. § 78.01 (2022). "However, an action for replevin is primarily possessory in nature, and the damages set forth in the statute refer to those incurred as a consequence of the unlawful detention, as opposed to the value of the property itself." *Idoni v. Ungurean*, No. 6:14-CV-102-Orl, 2014 WL 12614498, at *2 (M.D. Fla. Dec. 16, 2014) (collecting cases); *see also Textron Fin. Corp. v. Unique Marine, Inc.*, No. 08-10082-CIV, 2008 WL 4716965, at *4 (S.D. Fla. Oct. 22, 2008) ("[A writ of replevin] is not designed 'for the purpose of recovering the amount which might be found to be due from the defendant to the plaintiff on account, but to recover the property in dispute.'" (quoting *Future Tech Int'l, Inc. v. Tae II Media, Ltd.*, 944 F. Supp. 1538, 1548 (S.D. Fla. 1996))). Neither in its argument opposing Troyz Towing's Motion for Directed Verdict nor in its proposed findings of facts and conclusions of law does J.B. Hunt cite any authority reflecting otherwise. Because Troyz Towing no longer possesses the trailer and replevin does not provide recovery for the trailer's value, J.B. Hunt's replevin claim fails.

### D. Unjust Enrichment

J.B. Hunt next claims Troyz Towing was unjustly enriched when it sold the trailer and retained the proceeds. "A claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (citing *Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004)). Importantly, to satisfy the first element, "[t]he

11

plaintiff must *directly* confer a benefit to the defendant." *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017) (emphasis added).

Upon review, the Court concludes that J.B. Hunt fails on its unjust enrichment claim. At trial, J.B. Hunt presented no evidence that it directly conferred a benefit upon Troyz Towing. "[A] party is not directly benefited by the plaintiff when the only benefit it received was for performing a service for a different party under a different, albeit arguable related, contract." *Coffey v. WCW & Air, Inc.*, No. 3:17-cv-90, 2018 WL 4154256, at *9 (N.D. Fla. Aug. 30, 2018) (citing *Virgilio*, 680 F.3d at 1337). This is not to say a direct benefit cannot pass through an intermediary. *See Williams v. Wells Fargo Bank N.A.*, No. 11-21233-CIV, 2011 WL 4368980, at *9 (S.D. Fla. Sept. 19, 2011). Still, where an intermediary is involved, the defendant must have "directly profited from and [been] involved in depriving the plaintiff of the benefit at issue." *Garcia v. Character Techs., Inc.*, 785 F. Supp. 3d 1157, 1184–85 (M.D. Fla. 2025) (quoting *Coffey*, 2018 WL 4154256, at *9).

For example, the *Williams* court held that the presence of an intermediary did not interrupt a benefit from being conferred. *Williams*, 2011 WL 4368980, at *9–10. There, homeowners challenging an excessively priced forced-placed insurance policy asserted a claim for unjust enrichment against the insurance broker and the bank imposing the insurance policy. *Id.* at *1, 8. While the bank and insurance broker only received commission or kickbacks from the premium payments made to the insurance company, the payments passed through the insurance company to the bank and insurance broker. *Id.* at *9. Neither had direct contact with the homeowners, but the defendants nonetheless received a direct benefit. *Id.*

12

Distinctly, here, the third-party purchaser of the trailer conferred the benefit—payment—upon Troyz Towing.    J.B. Hunt's execution of the hold harmless and agreement to issue payment, although related to the trailer, is separate from the third party's performance of its contract with Troyz Towing.  The benefit did not pass from J.B. Hunt through the third-party; rather, the parties maintained separate agreements requiring separate performance.  J.B. Hunt's conferral of a benefit to support a claim for unjust enrichment is too tangential and thus its claims for unjust enrichment fails.

### E.  Damages

J.B. Hunt seeks actual damages in the trailer's fair market value, consequential damages for lost profits, punitive damages, pre-judgment interest, and attorney's fees. Upon review, J.B. Hunt is entitled to actual damages, punitive damages, pre-judgment interest, and attorney's fees and costs.

J.B. Hunt argues that it is entitled to the fair market value of the trailer, which the parties have stipulated to, as actual damages.  However, J.B. Hunt did not own the trailer but had, instead, a leasehold interest in the property.  Ordinarily, the proper measure of damages where a plaintiff has only a leasehold interest in the converted property is the fair market value of the leasehold interest. *Fletcher v. Dees*, 134 So. 234, 235 (Fla. 1931) (holding that "one who has a special interest can only recover the value of his special interest in the property"); *Page v. Matthews*, 386 So. 2d 815, 816 (Fla. 5th DCA 1980) ("It is also well settled that one who has a special interest in personal property can only recover in a conversion action the value of his interest in the property.").[5]  At trial, J.B.

---

[5] The Fourth District Court of Appeal recently discussed the applicability of the "stranger" rule in Florida, which "allows special interest holders to recover the full value of the property but only in cases where the holder of such limited or qualified interest is

13

Hunt offered testimony that it was able to negotiate a buyout of the remainder of its lease agreement with Bowman for a total of $32,920.00.  (Doc. 58 at 151:8–152:7, 171:11–13). The Court finds that this is a reasonable representation of the value of J.B. Hunt's interest in the property and will award J.B. Hunt the same.[6]

With respect to J.B. Hunt's request for an award of $225.00 in daily lost profits, the Court finds it is not warranted here.  While pleaded in the Amended Complaint, J.B. Hunt did not present evidence establishing this amount at trial and thus fails to satisfy its burden.

As to punitive damages, courts typically award such damages "where there is some evidence in the record of actual malice or reckless disregard of the plaintiff's rights by the defendant in asserting dominion over the plaintiff's property—as this proof places the case squarely under the intentional tort-malice rule in which punitive damages are recoverable."  *Ciamar Marcy, Inc. v. Monteiro Da Costa*, 508 So. 2d 1282, 1284 (Fla. 3d DCA 1987) (collecting cases).

Having found that Troyz Towing made fraudulent misrepresentations and failed to comply with several statutory requirements, the conduct demonstrates a disregard for state law and J.B. Hunt's rights, thereby warranting an award of punitive damages in the

---

also liable to a person owning a superior or remainder interest." *Hollywood Imps. Ltd., Inc. v. Nationwide Fin. Servs., LLC*, 360 So. 3d 759, 762 (Fla. 4th DCA 2023) (citing *First Tenn. Bank, Nat'l Ass'n v. Graphic Arts Ctr., Inc.*, 859 S.W.2d 858, 867 (Mo. Ct. App. 1993)).  However, the Fourth District held that the rule did not apply in the case before it and this Court has not located any legal authority applying the rule in Florida. *Id.* at 763. As such, the Court declines to apply it in this case absent more clear authority from the state courts.

[6] J.B. Hunt is not entitled to monetary damages for each claim.  *See Coton v. Televised Visual X-Ography, Inc.*, 740 F. Supp. 2d 1299, 1313 (M.D. Fla. 2010) ("[A] plaintiff may not recover damages twice for the same injury simply because she has two legal theories.").

amount of $20,000.00. *See Ensley v. Gene's Wrecker Serv., Inc.*, No. 3:16cv713, 2019 WL 1063392, at *2 (N.D. Fla. Feb. 4, 2019) (awarding punitive damages for conversion where defendant sold plaintiff's vehicle and did not provide requisite notice of the vehicle's storage and sale), *report and recommendation adopted*, 2019 WL 1059689 (N.D. Fla. Mar. 6, 2019); *Pinnacle Fin. Grp., Inc. v. TriStar Acceptance, LLC*, No. 16-62169-CIV, 2017 WL 7355331, at *2 (S.D. Fla. July 17, 2017) (awarding punitive damages where defendant converted plaintiff's property despite knowing it had no right to the property), *report and recommendation adopted*, 2017 WL 7362290 (S.D. Fla. Aug. 9, 2017).

Next, J.B. Hunt is entitled to pre-judgment interest. *See Fattorusso v. M/V WANDERER II*, No. 2:10-cv-201-FtM, 2012 WL 3143843, at *1 (M.D. Fla. Aug. 1, 2012) ("The proper measure of damages for conversion is the fair or reasonable market value at the time and place of the conversion, plus prejudgment interest."). Because the parties have not specially contracted for the rate of interest, section 55.03, Florida Statutes, applies. *See TracFone Wireless, Inc. v. Hernandez*, 196 F. Supp. 3d 1289, 1303 (S.D. Fla. 2016) ("In the absence of a special contract for the rate, the applicable rate of interest is generally stated in Florida Statute Section 55.03." (quotation omitted)). Pre-judgment interest is accrued from the date of the conversion until the judgment. *See Fattorusso*, 2012 WL 3143843, at *2. Conversion occurs "at the time the [defendant] refused to return the [plaintiff's] property when [it] was requested to do so." *Gillette v. Stapleton*, 336 So. 2d 1226, 1227 (Fla. 2d DCA 1976). In this case, that date is unclear because Troyz Towing misrepresented for a period of time that it would provide the tax identification number. Because J.B. Hunt does not proffer a date for which the conversion first occurred

15

and it is unclear from the record, the Court dates pre-judgment interest to accrue from the date on which Troyz Towing sold the trailer, August 24, 2022.

Lastly, the parties dispute whether J.B. Hunt is entitled to attorney's fees and costs. J.B. Hunt argues that section 713.78(6), Florida Statutes provides for attorney's fees and costs in favor of the prevailing party. Troyz Towing claims the statute limits such awards to actions filed in county court.

Section 713.78(6) provides in pertinent part:

> The owner or lienholder may file a complaint after the vehicle or vessel has been sold in the county court of the county in which it is stored. Upon determining the respective rights of the parties, the court may award damages, attorney fees, and costs in favor of the prevailing party.

Troyz Towing's argument that the right to attorney's fees under this subsection is restricted to actions filed in county court is undermined by the statute's permissive language, "may." *See Johnson ex rel. Johnson v. Badger Acquisition of Tampa LLC*, 983 So. 2d 1175, 1181 n.3 (Fla. 2d DCA 2008) ("When interpreting a statute, 'shall' is generally read as being mandatory while 'may' suggests a permissive term."). Section 713.78(6) "simply permits an owner to file a complaint in the county court, not . . . that an owner may file a complaint *only* in the county court." *Fla. Keys Towing, Inc. v. CarMax Auto Superstores, Inc.*, 406 So. 3d 1096, 1098 (Fla. 3d DCA 2025); *see also Mirra v. Junior's Tow & Storage, LLC*, No. 20-20036-CIV, 2020 WL 13389752, at *2 (S.D. Fla. Nov. 17, 2020) (awarding attorney's fees and costs pursuant to section 713.78(5)(c), which contains the same language regarding filing in county court), *report and recommendation adopted*, 2020 WL 13389744 (S.D. Fla. Dec. 10, 2020). Accordingly, J.B. Hunt is entitled to reasonable attorney's fees and costs to be determined in accordance with Local Rule 7.01.

16

**IV.    CONCLUSION**

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. The Clerk is directed to enter judgment in favor of J.B. Hunt Transport, Inc., and against Troyz Towing and Storage, Inc., as to Count I and Count II of the Amended Complaint in the sum of $52,920.00 plus pre-judgment interest.

2. The Clerk is further directed to enter judgment in favor of Troyz Towing and Storage, Inc., and against J.B. Hunt Transport, Inc., providing that J.B. Hunt Transport Inc. shall take nothing as to Count IV and Count V of the Amended Complaint.

3. Defendant Troyz Towing and Storage, Inc.'s Oral Motion for Directed Verdict (Doc. 52) and Renewed Oral Motion for Directed Verdict (Doc. 54) are **DENIED**.

4. The parties shall confer in a good-faith effort to resolve the reasonable attorney's fees and costs and shall notify the Court if an agreement has been reached.  If the parties cannot agree on the amount, then Plaintiff shall file a motion in accordance with Local Rule 7.01 on or before **March 10, 2026**.

5. The Clerk is directed to close this case.

**DONE AND ORDERED** in Jacksonville, Florida on February 19, 2026.

17

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

18